1

2

3

4

5

6                                    **IN THE UNITED STATES DISTRICT COURT**

7                                        **FOR THE DISTRICT OF ARIZONA**

8

9    Guillermina Parra, Terri Corrales,        )
     Francisco Parra and Jesus Parra,          )         No. CV-10-008-TUC-DCB-DTF
                                                )
10                    Plaintiffs,               )         **REPORT AND RECOMMENDATION**
                                                )
11   vs.                                        )
                                                )
12   PacifiCare of Arizona, Inc.,               )
                                                )
13                    Defendant.                )
                                                )
14   _____           )

15          Pending before the Court are the parties' cross-motions for summary judgment based

16   on a stipulated statement of facts (Doc. 22), which are fully briefed (Docs. 27-33).  Pursuant

17   to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Ferraro

18   for a report and recommendation.  The Magistrate recommends the District Court, after its

19   independent review of the record, enter an order dismissing this action for lack of subject

20   matter jurisdiction.

21                                              **FACTS[1]**

22   1.     Manuel Marcos Parra (DOB March 16, 1930) married Guillermina Reyes Parra on
            June 18, 1951.  Manuel and Guillermina Parra had three children: named Plaintiffs
23          Terry Corrales, Francisco (Frank) Parra and Jesus Parra.  Frank Parra died on
            February 10, 2010.  Manuel Parra retired from the Sunnyside Unified School
24          District #12 on March 17, 1992.  Manuel Parra started to receive Social Security
            retirement benefits in April 1992.  Subsequent to that date Manuel Parra became
25          eligible for Medicare benefits as a Social Security retirement recipient.

26

27   _____

28   [1]    The facts are substantively identical to the parties' Stipulated Statement of Facts (Doc.
     22), however, the paragraphs were condensed and the exhibit references were altered to
     reflect their location on the Court's docket.

2.  PacifiCare of Arizona, Inc. (PacifiCare) is licensed under A.R.S. §§ 20-1051 *et seq*., as a Health Care Service Organization, and is a federally qualified Health Maintenance Organization (HMO).  PacifiCare is a Medicare Advantage HMO pursuant to its contract with the Centers for Medicare and Medicaid Services (CMS), the governmental agency that administers the Medicare program and offers a Medicare Advantage Plan to enrollees.  PacifiCare's contract with CMS and amendments thereto is Exhibit A to Document 22.  By enrolling in a Medicare Advantage plan, Medicare-eligible individuals may substitute their receipt of direct Medicare benefits for having their Medicare covered services provided through a Medicare Advantage HMO and its network of contracted health care providers. As a Medicare Advantage HMO, PacifiCare is regulated under the federal Medicare statute, 42 U.S.C. § 1395, et seq., and regulations promulgated thereunder, 42 C.F.R., ch. IV.  At all relevant times, Manuel Parra was enrolled in and was a "covered person" under a Medicare Advantage plan (the Medicare Plan) offered and underwritten by PacifiCare, known as "Secure Horizons."

3.  The Medicare Plan is classified as Medicare Advantage Health Maintenance Organization plan under 42 U.S.C. §§ 1395w-21 through 1395w-28 and 42 U.S.C. § 1395mm.  Medicare Plan's Evidence of Coverage is Exhibit B to Document 22. The Medicare Plan's Evidence of Coverage contains the following written provisions:

**Third Party Liability and Subrogation**
In the case of injuries caused by any act or omission of a third party, and any complications incident thereto, we shall furnish all Covered Services. However, you agree to fully reimburse us or our designee for the cost of all such services and benefits provided, immediately upon obtaining a monetary recovery, whether due to settlement or judgment, as a result of such injuries.

You agree to cooperate in protecting the interests of UnitedHealthcare or its designee under this provision. You shall not settle any claim, or release any person from liability, without the written consent of UnitedHealthcare, wherein such release or settlement will extinguish or act as a bar to our right of reimbursement.

Subrogation is the substitution of one person or entity in the place of another with reference to a lawful claim, demand or right. Immediately upon paying or providing any benefit, we shall be subrogated to and shall succeed to all rights of recovery, under any legal theory of any type, for the reasonable value of services and benefits provided by us to you from: (a) third parties, including any person (or any insurer of any person) alleged to have negligently or intentionally, or by reason of product liability or breach of warranty, caused you to suffer Sickness or Injury; (b) your employer; or (c) any other person or entity legally liable for damages or harm to you, including but not limited to damages under any medical payment, uninsured or underinsured motorist coverage benefits payable by your own automobile insurer, or any damages payable by any homeowner insurance carrier or any other insurer's medical payment provision. These third parties, persons and entities are collectively referred to as "Third Parties" herein, and claims against them are "Third Party Claims." You agree to assign us all rights of recovery against such Third Parties; to the extent of the reasonable value of services and benefits we provide to you,

- 2 -

plus reasonable costs of collection. We or any of our subsidiaries or owned affiliates are not a Third Party under this Plan.

The following is agreed upon between you and us:
• You will cooperate with us in protecting our legal rights to subrogation and reimbursement; and you acknowledge that our rights under this Section will be considered as the first priority claim against any Third Parties, to be paid before any of your other claims are paid. Specifically, but without limitation, you agree to: (i) provide any relevant information we may request; (ii) sign and deliver such documents as we or our agents may reasonably request to secure the subrogation claim; (iii) respond to requests for information about any accidents or injuries; (iv) make court appearances; and (v) obtain the consent of the Plan or our agents before releasing any party from liability for or payment of medical expenses. We are not obligated to pursue subrogation or reimbursement either for our own benefit or on your behalf.
• You will do nothing to prejudice our rights under this provision, either before or after the need for services or benefits under this EOC. We may, at our option, take necessary and appropriate action to preserve our rights under these subrogation provisions, including filing suit on our own behalf as your subrogee. Your failure to cooperate in this manner shall be deemed a breach of this contract and may result in the institution of legal action against you.
• We will not use the rights enumerated throughout this Section to affect or impair any parental financial obligations, such as child support, associated with Pregnancy.
• No court costs or attorneys fees may be deducted from our recovery without our express written consent; and no so-called "Fund Doctrine" or "Common Fund Doctrine" or "Attorney's Fund Doctrine" shall defeat this right. We are not required to participate in or pay court costs or attorneys fees to any attorney or other representative or agent hired by you to pursue a claim relating to your Sickness or Injury.
• We may collect, at our opinion, amounts from proceeds of any Third Party settlement (whether before or after any determination of liability) or judgment that may be recovered by your or your legal representative, regardless of whether or you have been made whole. You will hold any proceeds of such a Third Party settlement or judgment in a constructive trust for our benefit under these subrogation provisions. We will be entitled to recover from you reasonable attorney fees incurred in collecting proceeds held by you.

**Reimbursement of Third Party Medical Expenses**
If you receive medical services under your Plan coverage after being injured through the actions of another person (a third party) for which you receive a monetary recovery, you will be required to reimburse us, or our designee, to the extent permitted under State and federal law, for the cost of such medical services and benefits provided and the reasonable costs actually paid to perfect any lien.

You must obtain the written consent of UnitedHealthcare or its nominee (entity or person authorized to give consent) prior to settling any claim, or releasing any third party from liability, if such settlement or release would limit the reimbursement rights of UnitedHealthcare or its nominee.

- 3 -

You are required to cooperate in protecting the interests of UnitedHealthcare or its nominee by providing all liens, assignments or other documents necessary to secure reimbursement to us or our nominee. Failure to cooperate with us or our nominee in this regard could result in termination of your Plan membership.

Should you settle your claim against a third party and compromise the reimbursement rights of UnitedHealthcare or its nominee without our written consent, or otherwise fail to cooperate in protecting the reimbursement rights of UnitedHealthcare or its nominee, we may initiate legal action against you. Attorney fees will be awarded to the prevailing party.

4.    On February 21, 2009, Manuel Parra was walking in the parking lot of the La Estrella bakery on South 12th Avenue in Tucson, Arizona.  A vehicle driven by John Thurston struck Manuel Parra causing what would be fatal injuries. Paramedics transported Manuel Parra to University Medical Center ("UMC").  He remained in the ICU Unit at UMC until his death on March 2, 2008.  Pacific Care paid UMC and other medical providers, pursuant to the Medicare Plan and its contract with the providers, for the medical care and treatment Manuel Parra received as a result of the February 21, 2009, accident and John Thurston's negligence.  The value of the medical benefits paid by the Medicare Plan in treatment of the injuries sustained by Manuel Parra in the February 21, 2009, accident is $136,630.90.

5.    John Thurston was insured by the Government Employees Insurance Company (GEICO).  In April 2009, Guillermina Parra, Terry Corrales, Francisco (Frank) Parra and Jesus Parra (collectively "the Parras"), through their attorney, made a demand for settlement with GEICO for wrongful death damages pursuant to Arizona's wrongful death statute.  The Parras sought damages based on the loss of their relationship with Manuel Parra.  The Parras did not seek or receive compensation for medical expenses for Mr. Parra's final treatment at UMC.  The Parras did not establish an estate, designate or appoint a personal representative of Manuel Parra, or pursue a claim under the survivorship statute against Mr. Thurston or GEICO.

6.    In June 2009, GEICO agreed to tender its policy limits of $500,000 to the Parras to settle their wrongful death claim.  In July 2009 PacifiCare, through its agent, informed the Parra's attorney and GEICO that it claimed a right of recovery for all medical expenses it paid for Manuel Parra's medical care and treatment resulting from the February 21, 2009, accident.  On September 21, 2009, GEICO issued a separate check made jointly payable to Goldberg & Osborn and Ingenix in the amount of $136,630.90 to be held in trust pending resolution of the Medicare Plan's right of recovery.  GEICO paid that amount as recognition of the Medicare Plan's assertion of a right of recovery and/or lien rights and to protect the interests of GEICO and its insured.

7.    The Settlement Agreement and Release of All Claims (Settlement Agreement) entered between the Parras, GEICO, and John and Linda Thurston is Exhibit C to Document 22.  The Parras each signed the Settlement Agreement.  The Settlement Agreement contains the following written provisions:

In consideration of the payments called for herein, Releasors hereby completely RELEASE, ACQUIT AND FOREVER DISCHARGE

- 4 -

Releasees of and from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, survival claims, rights, damages, costs, losses of consortium, loss of services, expenses and compensation of any nature whatsoever, whether based on tort, contract or other theory of recovery, and whether for compensatory or punitive damages, which Releasors now have, or which may hereafter accrue or otherwise be acquired on account of, or in any way growing out of, and which are the subject of the Claim, including, without limitation, any and all known or unknown claims which now exist or may hereafter arise in favor of Releasors, if any, in connection with
the alleged damages to Releasors, as wrongful death beneficiaries, pursuant to A.R.S. § 12-611 *et. seq.* or a Personal Representative pursuant to A.R.S. § 14-3110. This Settlement Agreement shall be fully biding and a complete settlement between Releasors and Releasees.

. . . .

It is further understood that Releasors agree to DEFEND, REIMBURSE, HOLD HARMLESS, AND INDEMNIFY Releasees from any liability arising from (1) any subrogation claim to which Releasors' recovery may be subject, including but not limited to any claim by Ingenix or Secure Horizons; (2) liens for any compensation paid under any statute or regulation, state or federal, including but not limited to any claim made by Medicare for the benefit of Manuel Parra; (3) medical payments due or claims to be due; (4) any attorney lien asserted by any prior legal representative; (5) any contract pertaining to the proceeds from the settlement referred to in this Settlement Agreement; and/or (6) all claims, liens, subrogation claims, obligations, actions, causes of action, damages, attorney's fees, costs and expense of every kind that may ever by sought by anyone for any reason in any way related to the enforcement of any such claims, liens, actions, damages, fees, costs, or expenses.

. . . .

Releasors agree to DEFEND, HOLD HARMLESS, AND INDEMNIFY Releasees from and against all such claims, liens, subrogation claims or liens, obligations, actions, causes of action, and damages, arising in favor of any health care provider who has provided medical and health care of any kind to Releasors. Releasors agree to fully pay and satisfy any and all such un[paid bills, liens, and claims and to obtain a complete release of all such bills, liens, and claims upon the request of counsel for Releasees and deliver the same to counsel. Releasors further agree to fully DEFEND, REIMBURSE, HOLD HARMLESS AND INDEMNIFY Releasees from all losses, damages, expenses, and costs, including but not limited to court costs, investigation expenses, and attorney's fees, which Releasees may incur in connection with any such bills, liens, or claims mentioned above regardless of cause, any fault, or negligent or grossly negligent acts or omissions of Releasees.

8.    The Parties have been unable to resolve the dispute regarding the Medicare Plan's right of recovery, resulting in this Declaratory Judgment Action.

9.    CMS (Center for Medicare and Medicaid Services, the federal agency that administers Medicare) in its Secondary Payer Manual (the Manual) defines

1    "liability insurance" as: it [liability insurance] includes payments under state
     "wrongful death" statutes that provide payment for medical damages.  Chapter 7,
2    Section 50.5.4.1.1 of the Manual states:

3    Wrongful death statutes are State laws that permit a person's survivors to
     assert the claims and rights that the decedent had at the time of death.
4    These laws may include recovering for the deceased's medical expenses.
     When a liability insurance payment is made pursuant to a wrongful death
5    action, Medicare may recover from the payment only if the State statute
     permits recovery of these medical expenses.  Generally, if the statute
6    permits recovery of the deceased's medical expenses, Medicare may pursue
     its payments, even if the action fails to explicitly request damages to cover
7    medical expenses.  Thus, in that event, even if the entire cause of action sets
     forth only the relatives and/or heirs damages and losses, then Medicare may
8    still recover its payments.

9            . . . .

10           NOTE: If a wrongful death statute does not permit recovering medical
     damages, Medicare has no claim to the wrongful death payments.[2]
11
                              **DISCUSSION**
12
             The central issue raised by the parties is whether Defendant has a federal right of
13
     action against Plaintiffs under the Medicare statutes.  The parties do not frame the issue as
14
     one of jurisdiction.  However, if Defendant does not have a federal right of action, which is
15
     the basis for jurisdiction in this Court, it must be dismissed.  *See, e.g. Care Choices HMO*
16
     *v. Engstrom*, 330 F.3d 786, 791 (6th Cir. 2003) (affirming dismissal for lack of subject matter
17
     jurisdiction because Medicare provision did not create a private right of action).  "If the court
18
     determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the
19
     action."  Fed. R. Civ. P. 12(h)(3); *see Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir.
20
     2002) (citing Rule 12(h) for proposition that court may sua sponte address subject matter
21
     jurisdiction at any time during a case).  Defendant points out that Plaintiffs believe there is
22
     jurisdiction as evidenced by their filing in this Court (Doc. 30 at 7), however, that is
23

24

25    _____

26       [2]   Plaintiff submitted the facts of paragraph 9 in a supplemental statement of facts.
     (Doc. 27-1.) Defendant objected to the extent Plaintiff did not include the entirety of the first
27   paragraph of section 50.5.4.1.1 of the Manual.  The Court includes the entirety of that
     paragraph in this factual statement.
28

1   irrelevant because jurisdiction cannot be created by stipulation.[3]  *See Holman v. Laulo-Rowe*

2   *Agency*, 994 F.2d 666, 668 n.1 (9th Cir. 1993) (citing *Neirbo Co. v. Bethlehem Shipbuilding*

3   *Corp.*, 308 U.S. 165 (1939)).

4           Because the Court is obligated to assess its subject matter jurisdiction in light of the

5   dispute over whether Defendant has a private right of action under federal law, it makes that

6   determination first.  "[D]istrict courts shall have original jurisdiction of all civil actions

7   arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A

8   case generally "arises under the law that creates the cause of action."  *Merrell Dow*

9   *Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  In a declaratory judgment

10  action, a federal court has jurisdiction if the defendant could have brought an action to

11  enforce his rights in federal court.  *See Transamerica Occidental Life Ins. Co. v. Digregorio*,

12  811 F.2d 1249, 1253 (9th Cir. 1987); *Janakes v. United States Postal Serv.*, 768 F.2d 1091,

13  1093-94 (9th Cir. 1985) (finding jurisdiction not based on the declaratory judgment act but

14  because the defendant could have brought a coercive action in federal court to enforce its

15  rights).  The parties contend that jurisdiction is premised on a federal statute; specifically,

16  Defendant contends the claims arise under the Medicare statute and the Medicare Secondary

17  Payer (MSP) Act.[4]

18  ───────────────

19          [3]   Plaintiffs' Complaint is framed as if Defendant has a federal private right of action

20  (Doc. 1), however, they argue to the contrary in the cross-motions for summary judgment.
    Plaintiffs are residents of Arizona and Defendant is incorporated in Arizona, therefore,

21  diversity jurisdiction is not implicated.  *See* 28 U.S.C. § 1332(a), (c)(1).

22          [4]   Pacificare does not contend the Medicare statute completely preempts state law,

23  pursuant to which a claim based on the preempted state law would be considered a federal
    claim.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Complete preemption is very

24  rare, and the Supreme Court has only clearly identified three federal acts that completely
    preempt state law and provide jurisdiction: section 301 of the Labor Management Relations

25  Act, section 502 of the Employee Retirement Income Security Act; and sections 85 and 86

26  of the National Bank Act.  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6-7, 11 (2003); *see*
    *Hofler v. Aetna US Healthcare of California*, 296 F.3d 764, 770 (9th Cir. 2002) (finding no

27  evidence that Medicare or MA plan statutes completely preempt state law causes of action),
    *abrogated on other grounds by Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005).

28

                                        - 7 -

**Statutory Scheme**

Title VXIII of the Social Security Act establishes Medicare, a federally funded health insurance program for the elderly and disabled.  42 U.S.C. §§ 1395 *et seq.*  Under Medicare Part C, there are health plan options that allow individuals qualified for Medicare to enroll with a private insurance company, Medicare Advantage (MA) plans. 42 U.S.C. §§ 1395w-21 to 1395w-29.  Any MA Plan must enter into a contract with the Secretary of Health and Human Services, 42 U.S.C. § 1395w-27, and the plan agrees to provide the same benefits an individual is eligible to receive under Medicare, 42 U.S.C. § 1395w-22(1)(A).

Under the MSP, Medicare is designated as a secondary payer when an individual has overlapping insurance coverage (including workmen's compensation, automobile or liability insurance, or no fault insurance).  42 U.S.C. § 1395y(b)(2).  If payment from a primary plan may be delayed, the Secretary of Health and Human Services (Secretary) may make payment for services, conditioned upon reimbursement by the primary plan.  *Id.* at §1395y(b)(2)(B).  The statute provides that the United States may bring an action against an entity responsible for payment for a service under a primary plan, for which the Secretary paid, and may recover from any entity that received payment from the primary plan.  *Id.* at § 1395y(b)(2)(B)(iii).  The statute explicitly creates a private right of action for damages if a primary plan fails to provide payment or reimbursement.  *Id.* at § 1395y(b)(2)(B)(iii), (b)(3)(A).

Under circumstances in which Medicare would be a secondary payer, pursuant to 42 U.S.C. § 1395y(b)(2), an MA plan may:

> charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section –
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4).  A similar statutory provision provides:

> (4) Notwithstanding any other provision of law, the eligible organization

1   may (in the case of the provision of services to a member enrolled under this
2   section for an illness or injury for which the member is entitled to benefits
    under a workmen's compensation law or plan of the United States or a State,
3   under an automobile or liability insurance policy or plan, including a self-
    insured plan, or under no fault insurance) charge or authorize the provider of
4   such services to charge, in accordance with the charges allowed under such
    law or policy –

5          (A) the insurance carrier, employer, or other entity which under
6          such law, plan, or policy is to pay for the provision of services, or

7          (B) such member to the extent that the member has been paid under
           such law, plan, or policy for such services.

8   42 U.S.C. § 1395mm(e).

9   **Analysis**

10  Pacificare contends Congress created an implied private right of action for MA plans.

11  If a federal statute does not create an explicit private right of action, suit may only be brought

12  if "Congress intended to provide the plaintiff with a[n implied] private right of action."

13  *Digimarc Corp. Derivative Litigation v. Davis*, 549 F.3d 1223, 1230 (9th Cir. 2008).  "[T]he

14  fact that a federal statute has been violated and some person has been harmed does not

15  automatically give rise to a private cause of action in favor of that person." *Touche Ross &*

16  *Co. v. Redington*, 442 U.S. 560, 568 (1979).  Congress must have intended to create a private

17  right and a private remedy for a federal cause of action to exist.  *Alexander v. Sandoval*, 532

18  U.S. 275, 286 (2001) (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11,

19  15 (1979)).

20  The Supreme Court created a four-part test to assess whether there is an implied

21  private right of action:  whether the plaintiff is a member of the class for whom the statute

22  was enacted to benefit; whether there is legislative intent to create or deny a remedy; whether

23  it is consistent with the legislative scheme to imply a remedy; and whether the cause of

24  action is one traditionally within state law.  *Cort v. Ash*, 422 U.S. 66, 78 (1975).  With

25  respect to factor one, there is no question that MA plans are intended beneficiaries of the

26  statutory provisions at issue.  *See Engstrom*, 330 F.3d at 789.  Since *Cort*, the courts have

27  recognized that legislative intent is the "ultimate question" and "unless this congressional

28

1   intent can be inferred from the language of the statute, the statutory structure, or some other

2   source, the essential predicate for implication of a private remedy simply does not exist."

3   *Thompson v. Thompson*, 484 U.S. 174, 179 (1988) (looking to the *Cort* factors only as a

4   guide to discerning Congress' intent) (quoting *Northwest Airlines, Inc. v. Transport Workers*,

5   451 U.S. 77, 94 (1981)); *Touche Ross & Co.*, 442 U.S. at 575-76 (noting that the first three

6   *Cort* factors focus on legislative intent, which is the determinative issue); *Digimarc Corp.*

7   *Derivative Litigation*, 549 F.3d at 1231 (focusing on the second *Cort* factor); *Townsend v.*

8   *University of Alaska*, 543 F.3d 478, 486-87 (2008) (finding congressional intent generally

9   dispositive).

10          The Court now turns to the central question of congressional intent.  The one circuit

11  court that has considered the specific question before this Court concluded that MA plans do

12  not have an implied right of action under § 1395mm.  *Engstrom*, 330 F.3d 786.  Defendant

13  does not rely on any substantive legislative history to support its argument and the court in

14  *Engstrom* concluded the history provided no guidance for the analysis.  *Id.* at 789.

15  Reviewing the legislative scheme of the statute convinced that court there was no private

16  right of action:

17          The entirety of § 1395mm is aimed at creating preconditions for and regulating
            the behavior or HMOs that substitute for Medicare.  The lengthy statute lists
18          the eligibility requirements for participating organizations and heavily
            regulates how much they get paid by Medicare, their duties to beneficiaries,
19          the type of services they may provide, the composition of their membership
            pool, and the composition of their insurance contracts.  *See* 42 U.S.C.
20          § 1395mm(a)-(i).  The subdivision within which the alleged implied private
            right of action is located, § 1395mm(e) regulates the premiums Medicare-
21          substitute HMOs may charge to beneficiaries.  Placing § 1395mm(e)(4) in this
            context makes it clear that it is intended to explain what Medicare-substitute
22          HMOs are still permitted to do – namely, include a provision in their own
            policies making them a secondary insurer – and is not intended to create an
23          affirmative right to collect from other sources of insurance via an action in
            federal court.  If an HMO chooses to include such a provision in its insurance
24          policy, its remedy would be based on a standard insurance contract claim and
            not on any federal statutory right.  Our conclusion is bolstered by the fact that
25          Care Choices HMO has this widely recognized alternative avenue for
            enforcement.

26

27

28

1   *Id.* at 790.   Subsequent to the *Engstrom* decision, one district court considered 42 U.S.C.

2   §§ 1395mm(e)(4) and 1395w-22(a)(4) and concluded that the statutory language was

3   "permissive" and could not be:

4           construed, explicitly or implicitly, as creating a mechanism for enforcing the
            contractual right to reimbursement if the insurer does include a subrogation
5           provision.  Once bargained for, the contractual right of reimbursement is not
            transformed into a federal right enforceable under the Medicare Act merely
6           because the contract relates to an insurer's Medicare plan.  The right to
            subrogation remains a contract dispute between a private insurer and its
7           insured.

8   *Nott v. Aetna U.S. Healthcare, Inc.*, 305 F. Supp.2d 565, 572 (E.D. Penn. 2004).

9           The Court in *Engstrom* also pointed out that the language of the Medicare

10  reimbursement provision is mandatory ("shall be conditioned on reimbursement," and "shall

11  reimburse") while the MA plan language is permissive ("may charge"), suggesting lack of

12  Congressional intent to create a remedy for the MA plans, *compare* 42 U.S.C.

13  § 1395y(b)(2)(B) *with* 42 U.S.C. § 1395mm(e)(4).  330 F.3d at 791.  Further, when Congress

14  grants an express private right of action in certain provisions of legislation, that undermines

15  implying a private right of action under other provisions.  *Touche Ross & Co.*, 442 U.S. at

16  571-72; *Opera Plaza Residential Parcel Homeowners Assoc. v. Hoang*, 376 F.3d 831, 836

17  (9th Cir. 2004) ("analogous provisions expressly providing for private causes of action can

18  imply congressional intent not to create an implied cause of action.").  The Court in

19  *Engstrom* found reliance on this language from *Touche* misplaced because that MA plan was

20  not asking the court to imply a remedy based on the MSP express remedy for Medicare.

21  Here, Pacificare appears to be arguing, in part, that it has an implied right based on

22  Medicare's express right.  According to *Touche*, the express right created for Medicare

23  weighs against finding an implied right for Pacificare.

24          Defendant argues that § 1395w-22(a)(4)'s reference to § 1395y(b)(2) incorporated

25  the provisions of § 1395y(b) that provide Medicare with a private cause of action, thereby

26  extending that right to MA plans.  The Court disagrees.  First, while § 1395w-22 references

27  the entities that qualify as a primary plan to which Medicare is a secondary payer in

28

1    § 1395y(b)(2)(A), the United States's right to bring an action is set forth in other subparts,

2    (b)(2)(B)(iii) and (B)(3)(A).  Thus, this statutory language in no way evidences an intent to

3    incorporate and extend Medicare's right of private action to MA plans.  Second, § 1395w-22

4    is titled "Benefits and beneficiary protections" and sets forth the services MA plans are

5    required and allowed to provide, as well as creating disclosure and coverage determination

6    requirements.  The secondary payer provision is within the subsection detailing the benefits

7    the MA plan must provide to members.  Subsection (a)(4)'s purpose is to notify the MA

8    plans that they <u>may</u> charge another responsible entity for services the MA plan is otherwise

9    obligated to provide under the subsection.  Just as the Court in *Engstrom* concluded when

10   analyzing § 1395mm, this provision is not intended to create a private right of action to

11   recover the cost of such services.  Rather, the statute allowed Pacificare to include

12   subrogation rights in its agreement with its members, but it did not create a federal right to

13   enforce that contract.

14           Next, Defendant argues that *Engstrom* is no longer persuasive because new

15   regulations have been issued since that decision.  The primary regulation upon which

16   Pacificare relies provides, "The MA organization will exercise the same rights to recover

17   from a primary plan, entity, or individual that the Secretary exercises under the MSP

18   regulations in subparts B through D of part 411 of this chapter."  42 C.F.R. § 422.108(f).

19   Defendants' reliance is misplaced.  "Language in a regulation may invoke a private right of

20   action that Congress through statutory text created, but it may not create a right that Congress

21   has not."  *Alexander*, 532 U.S. at 291 (citing *Touche Ross & Co.*, 442 U.S. at 577 n.18).

22   Defendant cites the *Rouse* case (which relies on *Alexander*), however, it misstates the legal

23   proposition from those cases when it summarizes it as:  "explaining that a regulation may

24   create a private right of action if consistent with Congressional intent."  (Doc. 33 at 5, citing

25   *Rouse v. United States Dep't of State*, 567 F.3d 408, 418 (9th Cir. 2009).)  *Rouse* actually

26   holds that a plaintiff has to "demonstrate that a federal *statute* vests him with" a private right

27   of action.    567 F.3d at 418.    Additionally, Defendant relies upon the Secretary's

28

1   interpretation of congressional intent, however, a Secretary's opinion on "the scope of the
2   judicial power vested by a statute" is not entitled to deference. *Adams Fruit Co., Inc. v.*
3   *Barrett*, 494 U.S. 638, 650 (1990). No regulations or agency interpretations alter the Court's
4   analysis – based on congressional intent as reflected in the relevant statutes – that Defendant
5   does not have a private right of action.

6           To the extent Pacificare is relying upon the preemption provisions of the statute as a
7   basis for jurisdiction, this assertion fails. Preemption establishes jurisdiction only in the
8   narrow instance of complete preemption, such that state law claims are converted to federal-
9   question claims. *See Holman*, 994 F.2d at 668-69. Defendant does not contend that
10  complete preemption is at issue; to the contrary, Defendant contends it has a viable state-law
11  contract claim. Defendant's arguments, that specific Arizona laws are preempted by a
12  federal law or regulation (such as the anti-subrogation law and wrongful death statute), may
13  be litigated in state court. *See, e.g. Hernandez-Gomez v. Leonardo*, 185 Ariz. 509, 917 P.2d
14  238 (1996); *Hutto v. Francisco*, 210 Ariz. 88, 90, 107 P.3d 934, 936 (App. 2005); *Dillon v.*
15  *Zeneca Corp.*, 202 Ariz. 167, 170, 42 P.3d 598, 601 (App. 2002); *Kadera v. Superior Ct.*
16  *Cnty. of Maricopa*, 187 Ariz. 557, 560, 931 P.2d 1067, 1070 (App. 1996). However, "[i]f
17  Congress intends a preemption instruction completely to displace ordinarily applicable state
18  law, and to confer federal jurisdiction thereby, it may be expected to make that atypical
19  intention clear." *McVeigh*, 547 U.S. at 698. Thus, preemption alone does not provide
20  jurisdiction for this action.

21          As mentioned above, Pacificare contends that even if there is no private right of action
22  based on the Medicare statute, it has the right to bring a state-law contract claim ("to enforce
23  its federally-granted right to obtain third party recoveries"). (Doc. 33 at 6.) Neither the
24  Court nor Plaintiffs disagree that Defendant may pursue a state contract claim. However,
25  Defendant cannot create a federal right of action or subject matter jurisdiction in this Court
26  by stating its contract claim as being based on a federal right. In other words, "a complaint
27  alleging a violation of a federal statute as an element of a state cause of action, when

28

Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331." *Thompson*, 478 U.S. at 817; *cf. Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308, 314 (2005) (jurisdiction may exist if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").

Based on review of the first three *Cort* factors, the Court finds that Congress did not intend a private right of action for MA plans. That is dispositive of the question before the Court. *Thompson*, 484 U.S. at 179. However, the Court assesses the fourth *Cort* factor because Defendant contends it weighs in its favor that enforcement of "Medicare rights" is not traditionally relegated to state law. (Doc. 30 at 6.) However, contract-based claims are traditionally questions of state law. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 698, 700 (2006) (finding no jurisdiction over health insurance company's claim to reimbursement from a tort recovery by estate of a federal employee covered by a Federal Employees Health Benefits Act insurance plan). *Cort*'s fourth factor does not alter the Court's analysis. Finally, because the Court does not have original jurisdiction over this action, it cannot exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(a) (granting supplemental jurisdiction over related claims within an action over which the Court has original jurisdiction).

## **RECOMMENDATION**

Based on the foregoing, the Magistrate Judge recommends that the District Court dismiss this action for lack of subject matter jurisdiction.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. If

1  objections are filed, the parties should use the following case number: **CV 10-008-TUC-**

2  **DCB**.

3        DATED this 4th day of February, 2011.

4

5

6

7

8                                           _____
                                            D. Thomas Ferraro
9                                           United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28